# NEW YORK SUPERIOR COURT.

JOSEPH BURNETT and others, respondents, agt. EDWARD PHALON and others, appellants.

If a party is examined as a witness, his *refusal* to answer a *cross question, pertinent to the issue*, is his own act. It must entail upon him the loss of his testimony in his own favor, or may subject him to the usual 'compulsory process to compel a witness to testify if his adversary require it.

Whether a *referee* appointed merely to compute and report the damages sustained by the plaintiffs by reason of the violation of their trade mark, admitting he has the power to strike out the plaintiffs testimony in chief, for refusing to answer a pertinent question on cross-examination, has the power to issue *compulsory process* to require the plaintiff to answer. *Quere ?*

The better practice is for the referee to give a *certificate* setting forth the questions, with the objections in detail of the witness to answering them, and his decision upon them, that the *court* may pass upon the remedy.

Where, however, the referee in such case struck out the plaintiffs testimony as to damages, for his refusal to answer a pertinent question on his cross-examination, and then *closed the case,* and thereby shut out all testimony on that question, which might have formed the subject of a general exception to the report; *held,* that an *exception* to this decision brought up the case to be regularly passed upon by the court.

A party is *not* privileged from answering a question which will reveal the *secret* of his trade; and such a question may be pertinent to the issue in an action for the infringement of a trade mark.

*Before all the Justices, October,* 1860.

APPEAL from an order of Mr. Justice PIERREPONT, allowing exceptions to a referee's report, and referring the case back to him.

The action, as is stated by counsel, was for an invasion of the plaintiffs' right to the use of the word "Cocoaine," with certain devices constituting a trade mark.

Judgment was entered in his favor, and by an order of the 3d day of May, 1859, an order was made of reference to take and state an account of the profits made and obtained by the defendants upon or by means of the article in said order referred to, and sold by them under the name of *Cocoaine,* and to ascertain and report the amount of damages sustained by the plaintiffs by reason of the depreciation of the sale of their article of *Cocoaine,* resulting from and in consequence of the infringement of the trade mark of the plaintiffs in said order adjudged, and all other damages which they might have sustained, and ought to be paid by the defendants, by reason and in consequence of such infringement of their said trade mark.

One of the plaintiffs was called as a witness before the reference on their behalf. After stating the amount of sales, he was asked what profits had been realized on the article sold, and answered $1.40 on each dozen. On cross-examination, he was asked how he got at the profits per dozen, and replied, by estimating the cost of the materials, labor, &c. He was asked how he arrived at the cost, and to state particulars. The answer was, by estimating the cost of such material in bulk, finding what number of bottles contain a given quantity of campanino, adding labor, bottles, packages, cost printing labels, and dividing the cost by the quantity produced.

The question was then asked: in making up your estimate of profits, as you have given, what materials do you calculate the cost upon?

The witness, under the advice of counsel, declined to name the materials of which the article " Cocoaine " is composed; the witness stated that the composition of the article is a secret, having a considerable pecuniary value to his firm not known to the public.

The referee decided that the inquiry was pertinent to the matter presented by the plaintiff, and should be answered. The witness declined to answer. The referee decided that the witness was in contempt for not answering the question, and as a penalty that the subject of inquiry, to wit, the damages which the plaintiff claimed to have sustained by reason of any loss of profits upon sales made by him, or which they might have made of the article manufactured by them, but for any of the alleged acts of the defendants, be stricken out.

The defendants counsel still insisted on an answer to the question. It was decided not now to be pertinent, and the counsel excepted.

An exception was taken by the plaintiffs, on the ground that the referee erred in deciding that the plaintiffs, in estimating their profits upon the article Cocoaine, were obliged to disclose the materials upon which the cost was calculated; that the inquiry was pertinent, and should be answered.

The plaintiffs also excepted to the decision that the plaintiff was in contempt for not answering, and as a penalty that the claim of the plaintiffs for damages should be stricken out of the case.

The referee reported that the plaintiffs had failed to prove any injury beyond mere nominal damages, to have been sustained by the plaintiffs by reason of any deprecia- tion of the sale of their article of Cocoaine, in consequence of any infringement of their trade mark by the defendant. In effect the report disposed of the whole case before the referee.

Upon the exceptions being brought before the court, the judge, at special term, allowed both exceptions, and referred the case back to the referee to proceed under the order.

PIERREPONT, Justice.   Under an order of reference like this, the referee has not the power to make the order to which the 12th exception refers.

I do not think that the witness could be compelled to reveal his secret of trade.   I am quite clear that a tanner, or dyer, or other tradesman cannot be compelled to reveal the secret of his trade.   Nor can the defendant, who infringes a trademark, force the plaintiff to reveal his trade secrets whenever evidence of damage is offered by the plaintiff. What effect this refusal to answer the cross-questions may have upon the evidence in chief, it is not necessary now to decide.

From this order the appeal is taken by the defendants.

E. W. DODGE, *for appellants.*
JOHN SHERWOOD, *for respondents.*

By the court, HOFFMAN, Justice.   The Code has in all its provisions as to the examination of a party on his own behalf, treated it as an examination of a witness.   It is now, as amended in 1860, as follows : a party to an action, &c., may be examined as a witness on his own behalf, or in behalf of any other party, in the same manner and subject to the same rules of examination as any other witness, except, &c.

It is stated in the books of practice that if a witness refuses to be cross-examined, his deposition shall be suppressed.   The *Clerk's Tutor in Chancery* ( *p.* 9) refers to a case, October, 1633, as deciding this. ( *Hurd's Practice,* 346, *n; The Practical Register, p.* —; *and Carsus Cancellariæ,* 322.)

Three cases are cited in *Hoffman's Ch. Pr.* (*vol.* 1, *p.* 463, *n*), in which it was declared to be the duty of the examining party to have the witness produced for cross-examination, and if he fail to do this the deposition may be suppressed. But the case of *Courtnay* agt. *Hoskins* (2 *Russell R.*, 253) is also cited, and the head note is explicit, that if the witness refuse to be cross-examined, it is not reason for suppressing the deposition, as he may be compelled to submit to it.

The witness had attended and was examined, and no cross-interrogatories had then been filed. On a subsequent day the party seeking to cross-examine had a subpœna served upon him, which he disobeyed.

*Whittick* agt. *Lysaght* (1 *S. and St. R.*, 446) is an example of a case in which the fault of the party in not producing the witness to be cross-examined within the time fixed by rule of the court, led to the suppression of the deposition.

*Raymond* agt. *Perrin* (10 *Simons R.*, 179) is a case in which the neglect of the party moving to suppress, to take a course prescribed by the practice of giving a notice of an intention to cross-examine, was an answer to his application.

In *Flouriday* agt. *Collett* (*Dickens R.*, 288) one Delaport had been examined as a witness on the part of the plaintiff; before he was cross-examined he secreted himself. The plaintiff was ordered to procure him to attend and be cross-examined in a. fortnight, or in default that his deposition be suppressed. A case of *Cason* agt. *Granger* is cited to the same effect.

And in *Beatagh* agt. *Beatagh* (1 *Hogan's R.*, 98) it was laid down that whenever a witness would not come forward to be cross-examined, the proper course is to move that he be produced to be cross-examined, or that the deposition already taken be suppressed.

*Spalding* agt. *Brougham*, in the exchequer (2 *For. Ex. R.*, 158), and *Charlton* agt. *Robson* (*id.*) are to the point, that the producing party must have the witness brought up to be cross-examined (it is to be assumed within a reasonable time), or the deposition taken by him in chief shall be suppressed.

All the authorities concur that if the producing party is in any way in fault, if he fails in pursuing the regular practice as to retaining or producing the witness, the examination taken on his behalf shall not stand.

And it may be that if, without his fault, but solely from the fault of the witness, the cross-examination had not taken place, the same will be the result. In the old case from the *Clerk's Tutor* in chancery, it was said: "If a witness refuse to be cross-examined, it is cause of exception to his testimony, and the court will suppress his deposition, for it argues favor and partiality."

And Lord ELLENBOROUGH, in *Casenove* agt. *Vaughan* (1 *M. and Sel. R.*, 6) says, it is agreeable to common sense that what is imperfect—and if I may say so, but half an examination—shall not be used in the same way as if it were complete.

These authorities afford a clear guide and rule, to a certain extent, upon the present question. If the party is examined as a witness, his refusal to answer a cross-question is his own act. It must entail upon him the loss of his testimony in his own favor, or may subject him to the usual compulsory process to compel a witness to testify if his adversary require it.

But there are still two questions to be settled. Was the interrogatory put to him pertinent to the issue, and if so, was he privileged from answering it?

It was pertinent. The plaintiff sought to establish his claim by proving his loss of profits. To make this out he made an estimate of the cost of the materials used for a dozen bottles, and the price obtained for the same. The

difference was profit. If he specified a given article to have cost a particular sum, and it was proven to have cost far more, the profit would be so much reduced. Hence the inquiry as to the articles was pertinent.

Was he privileged from answering the particular question?

The learned judge holds that he was not bound to reveal the secret of his trade. On what ground is this exception placed ?

I have looked in vain for any direct authority to the point. Can the principle of the exemption, if it exist, be any other than subjection of the witness to a pecuniary loss?

The English statute of IV *George* 3, *c.* 37, was passed after the discussion in the case of Lord MELVILLE. Eight judges had held against four that a witness was bound to answer, though by so doing he might subject himself to a civil action, or charge himself with a debt.

Our own statute (2 *R. S.*, 406, 471) declares that any competent witness in a cause shall not be excused from answering a question relevant to the matter in issue, on the ground merely that the answer to such question may establish or tend to establish that such witness owes a debt, or is otherwise subject to a civil suit.

*Mauran* agt. *Lamb* (7 *Cow. R.*, 176) was a case after the English act, and before our own. The party in interest, the plaintiff's *cestui que trust*, was not compelled to testify against his interest.

So in *Cook* agt. *Spaulding* (1 *Hill R.*, 580), after our statute, it was held that the distinction between calling a party in interest and a witness whose answer might subject him to a civil suit, was cited upon and applied to a member of a banking association who refused to be sworn against them.

But the Code adopts the principle of a bill of discovery, and allows a party to be examined against his interest, as well as to be examined on his own behalf.

In *Bull* agt. *Lovelace* (10 *Pick. R.*, 9) it was ruled that a witness was not exempted from answering, although the answer may affect his pecuniary interest.

I conclude that the witness had not the privilege he claimed; that the referee was right in his decision upon that point; and that the exception taken to his decision, and allowed by the judge, was not well taken. This was the eleventh exception.

But the referee was wrong in rejecting the claim absolutely, and preventing the plaintiff supporting it by testimony of another kind, after his own had been stricken out, if that was applied for.

It is to be noticed that the ordinary practice in cases of this description, is not for the referee to proceed and close the case, where a witness has refused to answer a question. From the authorities cited in *Hoffman's Master in Chancery*, ( *p.* 60), in 1 *Daniel's Practice*, 920, *et seq.;* and from the case of *Taylor* agt. *Wood* (2 *Edward's Ch. R.*, 94); *Fokers* agt. *Meeker* (3 *id.*, 452); and *Mowatt* agt. *Graham* (2 *id.*, 13), it is to be deduced that the usual course is for the witness to state his objections to answering a question or questions, usually termed demurring to the interrogatories. These were to be reduced to writing, passed upon by the master if the case was before him. His certificate was presented to the court, which was applied to for process of attachment to compel an answer.

It was once held that the demurrer should be set down regularly for argument. A practice prevailed in our court of chancery for the party seeking the disclosure objected to, to move for compulsory process, and the court then determined the point. The proceedings were only suspended as to the particular point. The examination of the same witnessses, or other witnesses to other matters, might be had. ·

This practice was accurately pursued in the case of *Byass* agt. *Smith,* heard on appeal at the general term of

this court, October 13, 1860.   A referee was appointed to ascertain and report the amount of damages sustained by the plaintiff by reason of the defendants use of the plaintiff's trade mark.   The plaintiff called the defendant, and in the course of the examination put to him various questions which he refused to answer.   The referee gave a certificate setting forth the questions, his decision upon them (that they were proper and to be answered), and the refusal of the witness.

The ground of the objection was a tendency of his answers to subject the witness to a criminal prosecution for a misdemeanor, under ch. 123, § 3 of the laws of 1850.

An order to show cause why an attachment should not issue against him was then obtained.   Mr. Justice ROBERTSON heard the application, and denied it, and his order was affirmed on appeal.

The objections were stated in detail in an affidavit used upon the motion.   The usual course appears to be for them to be set forth on the face of the objection, and thus make part of the master's certificate.  (1 *Daniel*, 920 ; *Bowman* agt. *Rodwell*, 1 *Mad. R.*, 266 ; *Strathmore* agt. *Strathmore*, 11 *L. R. N. S. Chan.*, 215 ; *Davis* agt. *Reed*, 5 *Simons R.*, 443.)

In the present case, however, as no objection has been taken upon this point of practice, and the referee shut out all testimony as to damages from a loss of profits, which might properly have formed the subject of a general exception to a report, we think the case may be regularly passed upon.

The 272d section of the Code, as amended in 1859, gives the same power to a referee to punish witnesses as for a contempt for non-attendance, or refusal to be sworn or testify, as is possessed by the court.   It is urged with much plausibility, at least, that this is confined to cases in which the referee tries the case, a reference of all the issues in the cause, where he is substituted for the court.   The resort

to the court in this case was certainly proper. Indeed, the power of the referee in any case can only be concurrent.

Whether the defendant could obtain compulsory process to obtain an answer, or the plaintiff has a right to abandon his own evidence in chief, are questions not now before us.

The conclusion is, that the order appealed from must be modified by reversing so much of it as allowed the 11th exception, and affirming it in all other particulars, no costs of the appeal to be allowed to either party.